IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TANYA DOWNING, | : |
|    Plaintiff, | : |
| v. | :      CA 1:12-00435-C |
| BILLY BARNES ENTERPRISES, | : |
|    Defendant. | : |

### MEMORANDUM OPINION AND ORDER

Pending in this single-count Title VII retaliation matter is a motion to compel the defendant to respond to certain discovery requests (requests for admissions (or RFAs), interrogatories, and requests for production (or RFPs)) (Doc. 16). The plaintiff has documented the parties' good faith efforts to resolve this dispute (Doc. 20; *see also* Doc. 18), and the defendant has filed its response (Doc. 24) and the plaintiff her reply (Doc. 25). This matter is ripe for resolution, and for the reasons set forth below, the plaintiff's motion is **GRANTED IN PART and DENIED IN PART**. The defendant is **ORDERED** to respond fully to RFA Nos. 9, 10, and 11 and Interrogatory Nos. 5, 7, 8, 10, and 14 and produce all non-privileged documents responsive to RFP No. 11 and the plaintiff's complete personnel file in response to RFP No. 1 no later than **May 10, 2013**.

    **I.**    **Pertinent Background and Parties' Positions.**

The plaintiff, hired by the defendant as a Customer Service Manager/Driver Manager in February 2010, alleges that leading up to her discharge on August 15, 2011, "[i]n the spring and summer of 2011, [she] began to feel that she was being discriminated against by Defendant in regards to pay, assignments, and other terms

and condition of employment." (Doc. 16 at 1.) Before retaining counsel and initiating formal proceedings, she alleges, she "attempted to resolve the issues with Defendant's management[ by contacting] Defendant's President Terry Kilpatrick, through e-mails and meetings . . . [,but w]hen the issues were not resolved, Plaintiff filed an EEOC Charge alleging discrimination against Defendant." (*Id.* at 1-2.) She further alleges that once the defendant heard that she had retained counsel and filed a complaint with the EEOC she was terminated.

Many of the discovery requests the defendant has refused to respond to concern the plaintiff's belief that she was being discriminated against prior to her alleged retaliatory termination:

| | |
|---|---|
| RFA No. 9 | Admit that prior to Ms. Downing's termination, Defendant was aware that she made complaints of gender discrimination on the basis of pay, job assignments, and vacation. |
| RFA No. 10 | Admit that based on the re-assignment of duties around the end of 2010, Ms. Downing was no longer eligible to be paid a monthly bonus. |
| RFA No. 11 | Admit that in late May/early June of 2011, Defendant discussed the possibility of re-assigning Plaintiff in order to give her direct responsibility for a fleet of drivers. |
| Interrogatory No. 5 | Please provide the name of each and every employee that worked as a Customer Service Manager/Driver Manager, was in charge of a crew of drivers or worked with drivers, vendors and customers from January 1, 2007 to the present, including their name, race, sex, date of hire, pay rate, supervisor(s), dates held those responsibilities, discipline, and date and reason for separation, if applicable. |
| Interrogatory No. 7 | Provide, in detail, each and every time the plaintiff contacted the defendant's President, Terry Kilpatrick, regarding her complaints of employment.  For each contact, please provide the date of the contact, how Mr. Kilpatrick was |

|  | contacted, Mr. Kilpatrick's response and any investigation into the plaintiff's complaints by Mr. Kilpatrick. |
|---|---|
| Interrogatory No. 8 | Please explain, in detail, why the plaintiff's duties and responsibilities were changed in late 2010 and why J.J. Helton's or Kerry Boatwright's were not. |
| Interrogatory No. 10 | Identify each and every employee who was aware that the possibility of being assigned a group of drivers was not received in a positive manner by Ms. Downing. For each, provide name, sex, job title, date of employment, address, telephone number, name of individual whom the employee provided such information, date the information was provided and whether there are any documents related to this interrogatory. |
| Interrogatory No. 14 | Please provide a list of all individuals and/or witnesses whom the defendant or any of its agents, have spoken to regarding plaintiff's and/or any other employee's allegations of discrimination and/or retaliation. Please provide the date of conversation, the name(s) of the individuals who were present, and whether a written or recorded statement was taken. |
| RFP No. 1 | The complete personnel files of the Plaintiff, and all employees holding the positions of Customer Service Manager/Driver Manager, or was in charge of a crew of drivers or worked with drivers, vendors and customers for the defendant from January 1, 2007 to the present. |
| RFP No. 2 | The personnel files of all individuals listed on the plaintiff's and/or defendant's Initial Disclosures. |
| RFP No. 4 | The personnel file and pay records of J.J. Helton, Don Reid, Bobby Reaves, Henry Boatwright and Earl Simpson. |
| RFP No. 11 | Any and all documentation, notes, files, letters, correspondence, e-mail or any electronic mailings, etc. regarding the plaintiff, any and all complaints made by the plaintiff, and any and all investigation into plaintiff's complaints. |
| RFP No. 14 | Any and all statements, depositions, declarations, affidavits or trial testimony of any individuals identified in either the plaintiff's or the defendant's Initial Disclosures. |

3

In defense of its refusal to respond to these requests, the defendant contends that "[t]he reason for plaintiff's termination is simple": "she refused to respond to Mr. Kilpatrick's question about whether she would be able to work for her supervisor[,] Luke Hudson."   (Doc. 24 at 1-2 (citing response to Interrogatory No. 2).)   And without citing authority, the defendant goes on to outline its position generally,

> The fundamental reason for [its] objections, and the core reason the Court should deny the motion to compel, is that those discovery items have nothing to do with the termination, which is the sole matter at issue. Instead, generally speaking, they are aimed at the merits and details of the various gripes and complaints plaintiff expressed during her employment.
> . . .
>
> The plaintiff's argument for expanding discovery into the myriad details of her work environment over the years is that it supposedly goes to whether she has a "good faith belief" that she was complaining about underlying discrimination.   This argument fails for a simple reason. Plaintiff's subjective belief at the time of her termination in 2011 (in good faith or not) was entirely dependent on <u>her own</u> knowledge, perceptions, and thought process <u>at that time</u>.   She could not have a belief in 2011 based on information she did not have.   The discovery of information that Billy Barnes now has, in 2013, cannot retroactively add to, or subtract from, whatever the plaintiff may claim was the basis for any subjective belief she claims to have held almost two years ago.   Except to the extent that Billy Barnes has documents prepared by the plaintiff (all of which have been produced), any information Billy Barnes has cannot possibly bear on the plaintiff's subjective "good faith belief."

(*Id.* at 2-3 (emphasis in original).)

    **II.**    **Relevancy.**

This Court "has broad discretion to ensure that parties 'obtain discovery regarding any matter, not privileged, that is relevant to any party's claim or defense,'" and "[f]or good cause, . . . may order discovery of any matter relevant to the subject matter involved in the action.'"   *Hope For Families & Cmty. Serv., Inc. v. Warren*, No.

4

3:06-CV-1113-WKW, 2009 WL 174970, at *3 (M.D. Ala. Jan. 26, 2009) (quoting FED. R. CIV. P. 26(b)(1)). Importantly,

> "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." [FED. R. CIV. P. 26(b)(1).] "[I]f there is an objection that the discovery goes beyond material relevant to the parties' claims or defenses, the Court . . . become[s] involved to determine whether the discovery is relevant to the claims or defenses[.]" FED. R. CIV. P. 26(b)(1), advisory committee's note (2000 Amendment). If it is not, the court must [then] determine "whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action. The good-cause standard warranting broader discovery is meant to be flexible." *Id.*

*Id.*; *see also id.* ("Rule 26(b)(1) is 'highly flexible,' *United States v. Microsoft Corp.*, 165 F.3d 952, 959-60 (D.C. Cir. 1999), and, as a whole, the federal discovery rules are to be construed broadly and liberally, *Herbert v. Lando*, 441 U.S. 153, 177 [ ] (1979).").

Rule 26, quite simply, "sets forth a very low threshold for relevancy," and "[t]hus, the court is inclined to err in favor of discovery rather than against it." *Kipperman v. Onex Corp.*, Civil Action No. 1:05-CV-1242-JOF, 2008 WL 1902227, at *10 (N.D. Ga. Apr. 25, 2008); *accord United States v. Tinoco*, 304 F.3d 1088, 1120 (11th Cir. 2002) ("The standard for what constitutes relevant evidence is a low one."); *but see Herbert*, 441 U.S. at 177 ("While 'the deposition-discovery rules are to be accorded a broad and liberal treatment to effect their purpose of adequately informing the litigants in civil trials,'" they are also "'subject to the injunction of Rule 1 that they "be construed to secure the just, *speedy*, and *inexpensive* determination of every action."'") (citations omitted and emphasis in original).

Obviously, "[t]o determine the relevancy of the information sought by [parties bringing motions to compel], the court takes note of the facts set forth in the[ ]

complaint." *Hargrove v. Washington State Dep't of Corrections*, No. C10–0363 RBL/KLS, 2011 WL 1771063, at *1 (W.D. Wash. May 9, 2011); *compare Lang v. Intrado, Inc.*, Civil Action No. 07-cv-00589-REB-MEH, 2007 WL 3407366, at *3 (D. Colo. Nov. 13, 2007) ("Based on the allegations in Plaintiff's Complaint, the information sought is clearly relevant, and Plaintiff's Motion to Compel is granted as to this request."), *with Pablo v. ServiceMaster Global Holdings, Inc.*, Nos. C 08-03894 SI, C 10-00628 SI, 2010 WL 5022564, at *3 (N.D. Cal. Dec. 3, 2010) ("Because the request for production is not relevant to any claim that has actually been alleged in a complaint, is not relevant to a defense, and is not reasonably calculated to lead to the discovery of admissible evidence . . . , *see* Fed. R. Civ. P. 26(b)(1), the Court DENIES plaintiffs' motion to compel[.]") *and Hughes v. LaSalle Bank, N.A.*, No. 02Civ.6384MBMHBP, 2004 WL 414828 (S.D.N.Y. Mar. 4, 2004) ("A litigant may not use discovery to determine whether there is a cause of action. The purpose of discovery is to find out additional facts about a well-pleaded claim, not to find out whether such a claim exists.") (citation omitted).

> The elements of a Title VII retaliation claim should be familiar to counsel:
>
> Title VII prohibits an employer from retaliating against an employee because (1) "he has opposed any practice made an unlawful employment practice" by the statute, or because (2) "he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under the statute. 42 U.S.C. § 2000e–3(a). A plaintiff may establish a *prima facie* case of retaliation under Title VII by showing that (1) he engaged in statutorily protected activity, (2) he suffered a "materially adverse action," and (3) there was a causal link between the two events. *Butler v. Ala. Dep't of Transp.*, 536 F.3d 1209, 1212–13 (11th Cir. 2008). To establish the first element, a plaintiff must show that he "had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311–12 (11th Cir. 2002) (quotation omitted). It is "not enough for a plaintiff to allege that his belief in this regard was honest and bona fide; the allegations and

6

> record must also indicate that the belief, though perhaps mistaken, was objectively reasonable." *Id.* at 1312 (quotation omitted).

*Hawk v. Atlanta Peach Movers*, 469 Fed. App'x 783, 785 (11th Cir. Apr. 6, 2012) (per curiam); *compare Little v. United Technologies, Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997) ("It is critical to emphasize that a plaintiff's burden under this standard has both a subjective and an objective component. A plaintiff must not only show that he ***subjectively*** (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was ***objectively*** reasonable in light of the facts and record presented. It thus is not enough for a plaintiff to allege that his belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable.") (emphasis in original), *with Hamner v. St. Vincent Hosp. & Health Care Center, Inc.*, 224 F.3d 701, 707 (7th Cir. 2000) ("The plaintiff must not only have a subjective (sincere, good faith) belief that he opposed an unlawful practice; his belief must also be objectively reasonable, which means that the complaint must involve discrimination that is prohibited by Title VII."); *see also Odom v. Mobile Infirmary*, Civil No. 06-0511-WS-C, 2008 WL 748398, at *9 (S.D. Ala. Mar. 17, 2008) (applying *Little*) ("Examining the record in the light most favorable to plaintiff, the Court readily finds that Odom has satisfied both the subjective and objective prongs. Her deposition testimony demonstrates that she subjectively deemed the screen saver to be racially offensive, and that she mentioned it to multiple co-workers and complained to her direct supervisor promptly and repeatedly. And examination of the screen saver confirms that Odom's reaction was objectively reasonable. It is appalling that a

supervisor in a modern-day workplace would display—for a period of several years, and within plain view of her subordinates—an image on her computer depicting herself as a smiling slave master beating and otherwise terrorizing three African-American slaves.").

The parties have simply failed to adequately discuss the objective component of the first element. The discovery sought certainly appears relevant to proving that element of the plaintiff's retaliation claim. And while the plaintiff may not be prosecuting a claim of gender discrimination in this Court *per se*, it has been held that "a successful retaliation claim [cannot be] presented effectively without some review of the facts leading to the underlying discrimination claim. . . . [Therefore,] evidence of the initial discrimination [is] relevant and admissible [even if a plaintiff, such as Ms. Downing,] decide[s] only to pursue her retaliation claims." *Flanagan v. Office of the Chief Judge of the Circuit Court of Cook County*, 663 F. Supp. 2d 662, 669-70 (N.D. Ill. 2009) (determining that "work on [an] unsuccessful discrimination claims did contribute to the success of the retaliation claim[,]" making that work "at least partially compensable") (citing *Hamner*, 224 F.3d at 707); *accord O'Sullivan v. City of Chicago*, 484 F. Supp. 2d 829, 847 (N.D. Ill. 2007) ("[E]ven had the Plaintiffs brought only a retaliation claim, the evidence regarding discrimination would still have been relevant under Rule 401, Federal Rules of Evidence."); *see also Flanagan*, 663 F. Supp. 2d at 669 ("Moreover, Plaintiff's case at trial turned substantially on whether the jury found Flanagan to be a credible witness and believed Flanagan's version of events. To prevail on her retaliation claim, Flanagan's attorneys were required to offer evidence of the alleged discrimination in order to bolster Flanagan's credibility and to give context to her

retaliation claim; that evidence contributed to Flanagan's ultimate success on the retaliation claim.  What the Seventh Circuit observed in *Merriweather* holds true here: 'a competent attorney must do more at trial than present just the bare bones of his *prima facie* case, particularly if he wishes to prevail where the case rests heavily on the credibility of the witnesses.'") (quoting *Merriweather v. Family Dollar Stores of Ind., Inc.*, 103 F.3d 576, 584 (7th Cir. 1996)).

This framework swiftly dispatches the defendant's argument that discovery related to the underlying discrimination claim has "nothing to do with the termination, . . . the sole matter at issue."  (Doc. 24 at 2.)  **_Such discovery is clearly relevant under Rule 26(b)._**  Accordingly, as set forth above, the defendant shall respond to all RFAs and interrogatories outlined in the plaintiff's motion.

With respect to the RFPs,[1] the plaintiff has not made the showing required to gain access to the complete personnel files of other employees of the defendant (RFP Nos. 1, 2, and 4).[2]  Under Alabama law, employees, whether public or private, have an expectation of privacy as to information contained in their personnel files.  *See Ex parte Liberty Mut. Ins. Co.*, 92 So. 3d 90, 102 (Ala. Civ. App. 2012) (as to private sector employees, determining that an adapted rule-of-reason test —under which it "must first [be] establish[ed] that the material sought is clearly relevant and that [the] need for the requested discovery is compelling because the information sought is not otherwise

---

[1] In her motion the plaintiff asserts that no privilege log had been provided with respect to documents withheld in response to, in particular, RFP Nos. 6, 9, and 15.  The defendant's response informs the Court that a privilege log has been produced, and the plaintiff chooses not to reassert any argument as to these RFPs in her reply.  This leads the Court to conclude that these RFPs are no longer at issue.

[2] The Court has determined that RFP No. 14 is overbroad.

9

readily obtainable"—"must be applied to determine whether [others'] personnel files . . . are discoverable"). The plaintiff has not made this showing. The plaintiff has also not *shown* that the named individuals or delineated groups are or are likely comparators. Nor has the plaintiff *shown*, assuming the named individuals or delineated groups are or are likely comparators, that all the documents contained in their personnel files are relevant. *Compare, e.g., Sokn v. Fieldcrest Community Unit Sch. Dist.*, No. 10–1122, 2013 WL 84702, at *6 (C.D. Ill. Jan. 7, 2013) ("Plaintiff's Request No. 6 asked for production of the complete personnel files of 'all School District principals, superintendents, vice-principal, dean of students, or state-certified administrative positions from January 1, 2003 to the present.' She asserts that these files are relevant because they 'are the comparators of the Plaintiff.' . . . [T]he Court disagrees with Plaintiff that these are comparators. No such finding has been made, and the argument in favor of such a finding is far from apparent on the surface. Until such time as the court is satisfied that these individuals are or are likely to be comparators, the relevance of the documents is highly questionable."), *with Nathan v. Ohio State Univ.*, Civil Action No. 2:10–cv–872, 2012 WL 5342711, at *11 (S.D. Ohio Oct. 29, 2012) ("'[P]ersonnel files might contain highly personal information such as an individual's unlisted address and telephone number, marital status, wage information, medical background, credit history (such as requests for garnishment of wages), and other work-related problems unrelated to [a] plaintiff's claims.' *Knoll v. AT & T*, 176 F.3d 359, 365 (6th Cir. 1999). For this reason, the Court declines to order production simply on the personnel file designation. Rather, the Court limits production to only those documents in the comparators' personnel files that are relevant to this action.") *and*

*Williams v. The Art Inst. of Atlanta*, Civil Action File No. 1:06–CV–0285–CC/AJB, 2006 WL 3694649, at *11 (N.D. Ga. Sept. 1, 2006) ("The Court concludes that Plaintiff is entitled to certain information in the personnel files who applied for short term disability; however, the Court will not require Defendant to provide the entire personnel files.  Plaintiff's document request, as it currently stands, seeks information merely because of the possibility that the personnel file may contain relevant information.  As a result, the Court concludes that Plaintiff is not entitled to the entire personnel files of possible comparators.  Plaintiff will be entitled, however, to discovery for a five[-]year period because Defendant, as previously discussed, has not successfully argued why the five[-]year period is too burdensome and overbroad.  Plaintiff shall limit her discovery to documents in the personnel file that would reveal she was treated differently than others who applied for short-term disability benefits.  The Court will allow Plaintiff to tailor her request for information in a subsequent document request because she is more familiar than the Court with the type of information in Defendant's personnel files.") (citation omitted); *see also Camara v. Brinker Int'l*, 161 Fed. App'x 893, 895-96 (11th Cir. Jan. 9, 2006) (per curiam) (affirming denial of motion to compel production of employee personnel files because prior discovery did not show the files contained information relevant to establishing proper comparators).

As such, the defendant need only produce, if it has not already, a complete copy of the plaintiff's personnel file at this time; the Court **DENIES WITHOUT PREJUDICE** the remainder of her motion as to the RFPs, leaving the plaintiff the opportunity to

make a better showing as to why such information is relevant.[3] The Court will consider any such showing on an expedited basis.

**III.  Costs.**

While Rule 37(a)(5)(A)[4] provides the applicable framework for imposition of costs and attorneys' fees for the bringing of the motion to compel, the Court will not impose costs and fees at this time.  *Cf. Bray & Gillespie Mgmt. LLC v. Lexington Ins. Co.*, 259 F.R.D. 568, 583 (M.D. Fla. 2009) ("The determination of appropriate sanctions under Rule 37 is within the district court's sound discretion.") (citing *National Hockey League v.*

---

[3]  Given the opportunity to conduct discovery in this matter will soon end, the Court recommends "that the parties [ ] meet and confer in a meaningful way over the proper scope of [these] request[s]. . . . [And i]f Plaintiff wishes to pursue the personnel file discovery, then the parties are directed to have an actual conversation (either in person or over the phone—letters and emails alone will not suffice) about the possibility of narrowing the scope of [the] request[s]."  *Haaf v. Flagler Constr. Equip., LLC*, No. 10–62321–CIV, 2011 WL 1871159, at *4 (S.D. Fla. May 16, 2011).

[4]  That provision of Rule 37 provides:

If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court *must*, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:

**(i)** the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;

**(ii)** the opposing party's nondisclosure, response, or objection was substantially justified; or

**(iii)** other circumstances make an award of expenses unjust.

*Id.* (emphasis added); *see also Harvey v. West Acquisitions & Inv. Group, Inc.*, No. 07-61265-CIV, 2008 WL 268602, at *3 (S.D. Fla. Jan. 29, 2008) ("In discussing the intent of [the rule], the Advisory Committee Notes to the 1970 amendments to Rule 37 stated, 'The change requires that expenses be awarded unless the conduct of the losing party or person is found to have been substantially justified.'") (citations omitted).

12

*Metro. Hockey Club*, 427 U.S. 639, 642 (1976)), *report & recommendation quashed on other grounds*, 2009 WL 5606058 (M.D. Fla. Nov. 16, 2009).  Instead, no later than fourteen days after the close of all discovery in this matter, which is currently May 31, 2013 (*see* Doc. 22, extending the May 10, 2013 discovery cutoff for the sole purpose of deposing Mr. Kilpatrick), that is **June 14, 2013**, the plaintiff shall present a petition for costs and fees associated with this motion to compel and related to any further discovery difficulties.  And the defendant shall respond to that petition no later than **June 21, 2013**.

    **DONE and ORDERED** this the 2nd day of May, 2013.

                                        s/WILLIAM E. CASSADY
                                        **UNITED STATES MAGISTRATE JUDGE**